UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-62409-Civ-Dimitrouleas/Snow

SUSAN M. JORDAN,

    Plaintiff,
v.

ER SOLUTIONS, INC.,

    Defendant.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

    Plaintiff, Susan M. Jordan, files this Opposition to Defendant's Motion for Final Summary Judgment, and, in support thereof, states as follows:

    1.    As to the Fair Debt Collection Practices Act ("FDCPA"), Defendant's Motion for Summary Judgment should be denied because 1) Plaintiff has standing to assert her claims; 2) Plaintiff's claims are not moot; 3) the FDCPA does not require more than one call to be placed for liability to accrue under 15 U.S.C. §1692d; and 4) Defendant has not carried its burden of proof on its bona fide error defense. Further, even if Defendant had shown the facts necessary to support the elements of a bona fide error defense, such a defense is a jury question. As to the Telephone Consumer Protection Act ("TCPA"), Defendant's Motion for Summary Judgment should be denied because 1) Plaintiff has standing to assert her claims; and 2) under the terms of Plaintiff's amended contract with the underlying creditor, Seventh Avenue, Defendant did not have consent to place automated calls to Plaintiff's cellular telephone number.

1

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE FDCPA SHOULD BE DENIED

      2.      Defendant makes two arguments with respect to Plaintiff's standing to sue under the FDCPA: that Plaintiff lacks standing because her claim is moot, and that Plaintiff lacks standing because she did not sustain a personal injury or injury in fact. Defendant is wrong. Firstly, as to mootness, Defendant contends that its written settlement offer mooted Plaintiff's claims because it offered Plaintiff "full relief." Importantly, however, Defendant's settlement offer did not provide for the entry of *judgment* against Defendant, the full relief sought by Plaintiff. The Eleventh Circuit recently ruled on this issue in a binding opinion, Zinni v. ER Solutions, Inc., 2012 U.S. App. LEXIS 18163 (11th Cir. Aug. 27, 2012), and held that "the failure of Appellees to offer judgment prevented the mooting of Appellants' FDCPA claims." Id. Thus, Defendant's settlement offer, which offered only settlement, and not for the entry of a judgment, did not moot Plaintiff's claim, and Defendant is not entitled to summary judgment on this basis.

      3.      As to injury, in an FDCPA action in particular, a plaintiff does not need to show actual damage for a court to award statutory damages: "The provisions of the Act are designed to prevent unscrupulous debt collection practices…to require that pecuniary damages be suffered as a prerequisite to an award of statutory damages would reduce the effectiveness of the act." Harvey v. United Adusters, 509 F. Supp. 1218 (D. Oregon 1981). See also Baker v. G.C. Services Corporation, 677 F.2d 775 (9th Cir. 1982). Most importantly, the Supreme Court has long recognized that the "injury required by Art[icle]

III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 578 (1992); <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975). To have Article III standing, 1) a person must have suffered an "injury in fact" – an invasion of a legally protected interest, 2) there must be a causal connection between the injury and the conduct complained of and 3) it must be likely that the injury will be redressed by a favorable decision. <u>Lujan</u> at 560. The only issue raised by Defendant as to Article III standing is whether Plaintiff has alleged an "injury in fact." The FDCPA is a statute which creates legal rights, and Defendant's violation of the statute is thus an invasion of a legally protected interest – therefore Plaintiff has shown an injury in fact. The same argument advanced by the Defendant here regarding Article III standing was recently rejected by United States District Judge Robert N. Scola in a similar FDCPA action:

> ARM correctly notes that "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 497 (2009). However, ARM's argument equates "injury in fact" or "actual or imminent injury" with a claim for actual *damages* under the FDCPA. Rather, the "injury in fact" component has been repeatedly defined as the invasion or violation of a legally protected interest. <u>See, e.g., Vt. Agency of Natural Res.</u>, 529 U.S. at 773 ("The interest must consist of obtaining compensation for, or preventing, the violation of a *legally protected right*." (emphasis added)); <u>Lujan</u>, 504 U.S. at 560–61(defining "injury in fact" as "an invasion of a *legally protected interest*" (emphasis added)); <u>Hollywood Mobile Estates Ltd.</u>, 641 F.3d at 1265 ("The injury-in-fact element requires invasion of a *legally protected interest*." (emphasis added)). The Supreme Court stated in both <u>Warth</u> and <u>Lujan</u> that "[t]he . . . *injury* required by Art. III may exist *solely* by virtue of 'statutes creating legal rights, the invasion of which *creates standing*.'" <u>Lujan</u>, 504 U.S. at 578 (emphasis added) (quoting <u>Warth</u>,422 U.S. at 500). The requirement of an injury-in-fact does not "suggest that Congress cannot define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." <u>Vt. Agency</u>

3

>of Natural Res., 529 U.S. at 773. Here, Congress has done just that providing (contrary to ARM's reading of the statute) that a violating debt collector may be liable *in the alternative* for a plaintiff's actual damages *or* statutory damages. *See* 15 U.S.C. § 1692k(a). ARM has not identified any controlling case law holding that a plaintiff lacks standing to pursue an FDCPA claim for statutory damages after receiving a message violating that statute. The FDCPA, expressly designed to protect consumers against unscrupulous debt collection practices, defines a legally protected interest of consumers against such practices, and a violation of the FDCPA's provisions invades that interest. Thus, Thorne has more than a mere financial stake in this litigation; she claims a distinct and palpable injury-in-fact based on her receipt of a message that violated her legally-protected interest under the FDCPA. Accordingly, Thorne does not lack Article III standing.

Order on Cross-Motions for Summary Judgment, DE 80, Thorne v. Accounts Receivable Management, Inc. et al., Case No.: 11-22290-Civ-Scola (S.D. Fla. July 24, 2012).

Thus, Defendant is not entitled to summary judgment on the basis that Plaintiff lacks standing.

4.   As to Defendant's argument that it is entitled to judgment on Plaintiff's claim under 28 U.S.C. § 1692d(6) because only one violative call was made, Defendant does not cite to any controlling case law for the proposition that a §1692(d) violation does not occur with a single call, only Southern District of Florida cases where the court interpreted §1692(d) to require more than one call to satisfy a violation. In those cases, the court did not cite to any controlling authority for this proposition. The statute itself does not specifically state that one call is insufficient to establish a violation of the FDCPA. If the statute meant to limit violations to two or more calls, that language would be specifically outlined in the statute. The interpretation that Defendant is advancing is that the statute allows for a freebie. You get one free pass for the first call, and then if there are subsequent violative calls, you are in violation of §1692d(6). That was not the

intention of Congress. Congress's intention was that the placement of telephone calls, any telephone calls, even a single one, without meaningful disclosure of the caller's identity, constitutes a violation. There is absolutely no reason to believe that Congress thought that a debt collector could fail to identify itself in its first call to a consumer and not be liable but become liable when it made a second violative call. The FDCPA is meant to be construed broadly, to be most protective of consumers. Ramirez v. Apex Fin. Mgmt., LLC, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008) (citing Ross v. Commercial Fin. Serv., Inc., 31 F. Supp. 2d 1077, 1079 (N.D. Ill. 1999) (internal citations omitted)). The limited construction espoused by Defendant is contrary to Congress's intent in enacting the FDCPA. Most importantly, the rulings in Sampaio, Bianchi, and Thorne are erroneous interpretations of the statute and are not binding on the Eleventh Circuit. At least one other court within this circuit has found one call sufficient to establish liability. Wood v. GC Services, L.P., 2012 U.S. Dist. LEXIS 39719 (M.D. Fla. 2012). Another court also found the content of just one call sufficient to establish liability. Doshay v. Global Credit Collection Corporation, 796 F. Supp. 2d 1301 (D. Colo. 2011). Thus, Defendant is not entitled to summary judgment on this basis.

     5.    As to Defendant's argument that it is entitled to summary judgment on the basis of its bona fide error defense, Defendant has not met its burden to prove its entitlement to this exception to the FDCPA's coverage. The FDCPA provides that:

> A debt collector may not be held liable in any action brought under this title if the debt collector shows *by a preponderance of evidence* that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

5

15 U.S.C. §1692k(c)(emphasis added).

This provision contains an evidentiary standard - a preponderance of evidence, which Black's Law Dictionary defines as: "the greater weight of the evidence; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary 1201 (7th ed. 1999). Defendant has failed to state facts sufficient to qualify as a *preponderance* of evidence - and, in reality, there is a factual issue as to the scant evidence that Defendant *has* provided. At the deposition of Defendant, Defendant's corporate representative, Anne Carlson, acting in her capacity as the representative of Defendant with the most knowledge, and providing testimony binding on the corporation, testified to the effect that she had no knowledge of what the policies or procedures were that were in place in 2009. Plaintiff's Statement of Additional Material Facts, filed contemporaneously in support of this Opposition, "PSAMF," ¶ 19, 20. Subsequently, Ms. Carlson submitted an affidavit attesting to her personal knowledge of the procedures in place, their maintenance, and the training of Defendant's collectors. The testimony provided by Ms. Carlson at the deposition of Defendant is contradicted by her affidavit in support of Defendant's motion for summary judgment, creating a factual issue, and a question of credibility for the jury[1]. Even if Ms. Carlson's statements were

---

[1] Plaintiff intends to file a motion to strike that portion of Ms. Carlson's affidavit where she offers testimony on Defendant's procedures because, at her deposition, she did not articulate the existence of any procedures, even though a topic of her deposition notice was the very same procedures to which she is now attempting to testify. A litigant should not be able to advance the person with the most knowledge on a particular topic, produce absolutely no testimony at deposition where the witness could be cross-examined, and then later produce by affidavit testimony asserting the existence of knowledge of that topic.

6

not contradictory, and it could be taken that Defendant had appropriate procedures in place, Defendant has still failed to show *maintenance* of any such procedures, or that maintenance was reasonable. The failure of any one element of the bona fide error defense is fatal to the entire defense. The Eleventh Circuit has stated:

> A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: 1) was not intentional; 2) was a bona fide error; and 3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error. Johnson v. Riddle, 443 F.2d 723, 727 (10th Cir. 2006) at 727-28. *The failure to meet any one of those three requirements is fatal to the defense*.

Edwards v. Niagara Credit Solutions, Inc., 2009 U.S. App. LEXIS 22500 (11th Cir. 2009)(emphasis added).

Defendant has broadly asserted that at the time the message in question was left for Plaintiff, that Defendant "required all of its collections, when leaving a message, to state that the call was from a debt collector and for purposes of collection a debt." Defendant, in a conclusory fashion, also states that "such was the procedure maintained by ER Solutions during December 2009..." This, however, is not the standard for a bona fide error defense - the Defendant must show, not only that it had procedures, but that it maintained those procedures, and that the maintenance of those procedures was *reasonable*. Defendant has not stated any facts that would allow for a determination of the reasonableness of Defendant's procedures - Defendant has not stated what those procedures even are, only that it had a policy, which it maintained. Defendant has not stated whether these are written policies or verbal policies, or how such policies and procedures are enforced, whether such procedures involve the supervision of collectors, et cetera. The procedures might not necessarily be reasonable, for example, if Defendant

put the policies regarding disclosure in place, but did not put in place an enforcement mechanism to ensure compliance.

Most importantly, because the bona fide error defense requires a determination of intent, courts have held that the bona fide error defense is the province of the jury: <u>See, e.g.</u>: <u>Pincus v. The Law Offices of Erskine & Fleisher</u>, Case No.: 08-81357 (S.D. Fla. January 19, 2010); <u>Valencia v. Affiliated Group, Inc.</u>, 2008 WL 4372895 (S.D. Fla. 2008)(citing <u>In Re Stratford</u>, 635 F.2d 365, 368 (5th Cir. 1981) ("Defendant's intent or lack of intent is a question of fact which the Court is unable to determine on this record as a matter of law."); <u>Niven v. National Action Financial Services, Inc.</u>, 2008 WL 4190961 (M.D. Fla. 2008) ("Defendant's intent and whether the error was bona fide are classic issues of fact, inappropriate for resolution on summary judgment.":); <u>Ramirez v. Palisades Collection LLC</u>, 2008 WL 2512679 (N.D. Ill. June 23, 2008) (reasonableness of procedures is an issue of fact for the jury); <u>Johnson v. Riddle</u>, 443 F.3d 723, 731-32 (10th Cir. 2006) ("The Jury should decide whether the bona fide error defense shields [defendant lawyer] from liability for violating the FDCPA"). This very Court has also previously iterated that the bona fide error defense presents issues requiring a factual determination. <u>Berg v. Merchants Association Collection Division, Inc., d/b/a MAF Collection Services,</u> 586 F. Supp. 2d 1336 (S.D. Fla. October 31, 2008). Thus, Defendant is not entitled to summary judgment on its bona fide error defense because there is a factual dispute related to this defense; because a determination of intent is the province of the jury; and because Defendant has failed to prove the defense by a preponderance of evidence.

9

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE TCPA SHOULD BE DENIED

6.      Defendant contends that Plaintiff lacks standing to sue under the TCPA because she is not the subscriber of her cellular telephone number. Defendant cites to a single Seventh Circuit case to support this proposition, Soppet v. Enhanced Recovery, 679 F.3d 637 (7th Cir. 2012). Soppet, however, concerned the necessity of acquiring the consent of the current owner of the phone number, as, in that case, the defendant claimed that it had been granted consent by the phone number's prior owner. In this district, courts have held that the "called party" is the actual user of the phone:

> Defendant contends that because Plaintiff's cellular phone was in his son's name, Plaintiff was not the called party "charged for the call" and therefore lacks standing to bring a claim under the TCPA. The Court disagrees. Plaintiff testified that he is the one that pays for his cellular telephone even though the cellular telephone is in his son's name...As such, the Court finds that Plaintiff was the one being charged for calls to his cellular phone and thus he has standing to assert a claim against Defendant for violations of the TCPA.

Rivas v. Receivables Performance Management, LLC, 2009 U.S. Dist. LEXIS 129378 (S.D. Fla. September 1, 2009).

Other courts have followed the rationale of Rivas: See, e.g., Mitchem v. Ill. Collection Serv., 2010 U.S. Dist. LEXIS 76581 (N.D. Ill. July 29, 2010) ("it is reasonable to infer that plaintiff paid for service to the cell phone number ICS called, which is enough to confer standing")(citing Rivas). In the instant case, Plaintiff's cellular telephone number is part of a family plan; she utilizes the phone number on a daily basis; and she pays the bills that are generated from the use of the phone. PSAMF ¶ 29. She is the ostensible owner of the telephone, and the person who uses and pays for the telephone

number. The inclusion of her cellular telephone number in a "family plan," where her husband is the primary account holder, does not eviscerate her ownership of the telephone number. Defendant's argument regarding standing would produce an entirely illogical result. Under Defendant's analysis of the act, the person with standing to sue would be Plaintiff's husband, because his name is on the account of their family plan. Then, it would be Plaintiff's husband whose consent would be necessary for the placement of automated calls. To contact Plaintiff using automated means, Defendant would need to have sought the permission of her husband. Because the debts at issue are not his debts, and the order forms filled out by Plaintiff were not filled out by her husband, Defendant's argument that that such provision amounts to consent would entirely fail as to Plaintiff's husband. This is not what Congress contemplated - Congress gave a right of action to the "called party." Defendant has erroneously concluded that "called party," exclusively means "telephone subscriber." This reading of the statute would, as discussed above, often produce illogical results at odds with the reality of each situation, and the true Congressional intent behind the Act. Thus, Defendant is not entitled to summary judgment on the basis that Plaintiff lacks standing to sue.

      7.     Defendant also contends that it is entitled to summary judgment on Plaintiff's TCPA claim because it had prior express consent to place automated calls to Plaintiff's cellular telephone. Defendant relies on a Declaratory Ruling of the Federal Communications Commission ("FCC"), for the proposition that it had express consent to call Plaintiff as a matter of law. Defendant is wrong. The FCC Ruling in question states that the provision of a telephone number in connection with an existing debt "reasonably

*evinces* prior express consent." <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 23 FCC Rcd. 559 (January 4, 2008) (emphasis added) ("FCC Ruling"). The original contract between Plaintiff and Seventh Avenue took up the issue of automated calls, and specifically authorized such calls by both Seventh Avenue and its debt collectors. The amendment to the contract more broadly covered all areas of communication, including authorizing Seventh Avenue to record Plaintiff's voice in telephone calls with Seventh Avenue, and specifically removed the consent to debt collectors. The amendment kept consent in place exclusively for Seventh Avenue. Plaintiff is entitled to rely upon this contractual provision that removed the prior agreement to consent. The agreement shows that by removing the consent to Seventh Avenue's debt collectors, that the parties intended that there would be no further automated calls by any debt collector acting on behalf of Seventh Avenue, while Seventh Avenue itself could make automated calls. When a contract has a provision included, and a subsequent amendment of that contract removes the provision, the action authorized by that provision is no longer authorized by the very terms of the amended agreement. In Defendant's view, even though Plaintiff and Seventh Avenue made an agreement between themselves that governed automated calls, the subsequent amendment of the contract to exclude automated calls by Defendant, as a debt collector, actually acts as the opposite - i.e. to now allow automated calls by a debt collector. This construction of the contract is unreasonable. Defendant was apparently enamored with the terms of the initial contract between Plaintiff and Seventh Avenue when it authorized automated calls by Defendant, but as the case progressed, Defendant learned that the initial contract had

been amended to *exclude* automated calls by Defendant, and now Defendant rejects the application of the contract, and contends that the FCC Ruling and its statement that provision of a cellular number is evidence of consent, now becomes conclusive evidence as a matter of law that Plaintiff has consented to Defendant's automated calls. The FCC Ruling on the issue of consent no longer applies when the parties contractually take up the issue of consent, as they have done here, and the elimination of that consent from the contractual scenario does not reinvigorate the FCC Ruling on the issue of consent nor does the FCC Ruling somehow magically replace the absolutely clear terms of the contract that eliminated automated calls by a debt collector.

       8.      The agreement shows an intent which contradicts the mere evidence of consent that may be presupposed under the FCC Ruling, which holds that merely providing the cellular number to the original creditor acts as a consent. As to the contract, by eliminating that consent for its debt collectors from the agreement, the contract thereafter prohibited automated calls from debt collectors, while continuing to allow those calls from Seventh Avenue. There would be no reason for Seventh Avenue to remove the consent to debt collectors other than an intent that no such calls would take place in the future, a dynamic that Plaintiff should be permitted to rely upon. This authorization of automated calls was independent of the FCC's Ruling, which states that, in general, provision of the number is *evidence* of consent, but the mere provision is not conclusive proof of consent, it is simply an indication of it, which in this case, is contradicted by the contractual arrangement between Plaintiff and Seventh Avenue.

9. The provision of a telephone number is evidence of consent, but it is not, as Defendant contends, consent as a matter of law. Defendant also notes the FCC's pronouncement that persons who have knowingly released their numbers have, in effect, given their permission to be called at such numbers. Defendant has mischaracterized this statement, however, as the entire statement includes an important qualifier:

> In the 1992 TCPA Order, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*.

FCC Ruling, ¶ 9 (emphasis added).

10. The agreement between the parties, discussed above, acts as such "instructions to the contrary," and takes the matter of consent outside of the purview of the FCC Order, and within the realm of contract law. Parties are free to contract under terms of their choosing, and Seventh Avenue explicitly chose to limit its contractual consent to itself alone. Seventh Avenue had previously included in its contract a consent for other owners and servicers of the account, but such consent was revoked when the amended contract went into effect July 1, 2010. PSAMF ¶ 21-25. Had Seventh Avenue made no contractual provisions regarding consent, then, as Defendant contends, the provision of the number in connection with the account might serve as evidence of implied consent under the FCC Ruling. Here, however, where the parties expressly took up the issue of consent in their contract and explicitly agreed to terms regarding consent, the contract is the evidence of the parties' arrangement regarding consent.

11. Defendant also argues that a provision in the *original* agreement between Plaintiff and Seventh Avenue, entitled "Consent to contact," contractually granted Seventh Avenue, and any other owner or servicer of the account, express consent to automated calls. Plaintiff does not dispute this. PSAMF ¶ 21. However, Plaintiff's agreement with Seventh Avenue was amended, effective July 1, 2010, to remove this provision, and this provision was replaced with another, which granted consent exclusively to Seventh Avenue, and did *not* provide the same consent for any subsequent owners, servicers of the account, or third parties. PSAMF ¶ 24. Defendant, acknowledging this amendment, argues, and offers the affidavit of Matthew Chamberlain in support of this position, that because Plaintiff's account was closed in December of 2009, the terms and conditions effective July 1, 2010 would not be applicable to Plaintiff. Firstly, there is a factual issue as to whether Plaintiff's account is in fact actually closed. Plaintiff never received any notice that her account with Seventh Avenue was closed, and, in response to a subpoena requesting the production of "all records relating to Susan M. Jordan," Seventh Avenue did not produce a single document evincing the closure of Plaintiff's account. PSAMF ¶ 27, 28. There is no record evidence to the effect that Plaintiff's account is closed, and as such, there is a genuine factual dispute as to whether the account is closed. The only evidence of this fact comes from the affidavit of Matthew Chamberlain, whose credibility is at issue, as Mr. Chamberlain has, elsewhere in his affidavit, sworn under penalty of perjury to the veracity of conditions that are entirely contradicted by the contract between Plaintiff and Seventh Avenue. Matthew Chamberlin asserts in his affidavit: "Seventh Avenue's Choose n' Charge Credit Terms effective July

15

1, 2010 are not applicable to Susan Jordan's account because the account was closed and inactive." (DE 38-4). Even if the account were closed, this statement is false, and entirely at odds with the contractual terms that Plaintiff and Seventh Avenue agreed to. The original agreement between Plaintiff and Seventh Avenue contains a provision, which states:

> V. OTHER IMPORTANT INFORMATION
> This notice applies to all of the financial products and services we provide. We reserve the right to amend this notice from time to time and to apply any changes to information previously collected as permitted by law. We will inform you of any changes, as required by law. *If you cease to be our customer, such as when your account is closed or becomes inactive, our information practices in this notice, as amended from time to time, will continue to apply.*

PSAMF ¶ 22 (emphasis added).

Thus, contrary to the assertions of Matthew Chamberlain, the contract between Plaintiff and Seventh Avenue, and any amendments thereto, continue to apply to Plaintiff's account despite closure or inactivity. An amendment to the contract between Plaintiff and Seventh Avenue was indeed made, which amendment removed the section Defendant relies upon, "Consent to contact," and added a section entitled "Communication":

> COMMUNICATION: We may use contact information you provide to contact you from time to time regarding your Account. We may contact you in any manner consistent with the information you have provided. for example, once you have provided contact information, we may contact you by telephone, e-mail, or text message. We may use automated technology for the purposes of contacting you, including but not limited to automatic dialing or similar equipment. We may call you on your mobile telephone. We may monitor or record calls from you to us and calls from us to you. When you give us your mobile telephone number we may contact you at

16

>that number using automated dialing equipment and we can leave pre-recorded or other messages, as allowed by law.

PSAMF ¶ 24.

This section grants consent exclusively to Seventh Avenue, and, notably, no longer expands coverage to any other owner or servicer of the account. Importantly, the amendment also contains a provision identifying the amendment as the complete agreement between the parties, *superseding any prior terms*. PSAMF ¶ 25. Thus, Defendant's reliance on the contract between Plaintiff and Seventh Avenue as a consent to automated calls placed by *Defendant*, is unavailing. Thus, Defendant is not entitled to summary judgment on the basis of consent.

                                    Respectfully submitted,

                                    DONALD A. YARBROUGH, ESQ.
                                    Attorney for Plaintiff
                                    Post Office Box 11842
                                    Fort Lauderdale, Florida 33339
                                    Telephone: (954) 537-2000
                                    Facsimile: (954) 566-2235
                                    don@donyarbrough.com

                                    s/Donald A. Yarbrough
                                    Donald A. Yarbrough, Esq.
                                    Florida Bar No. 0158658

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-62409-Civ-Dimitrouleas/Snow

SUSAN M. JORDAN,

    Plaintiff,

v.

ER SOLUTIONS, INC.,

    Defendant.
_____/

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on September 11, 2012, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  s/Donald A. Yarbrough
                                                  Donald A. Yarbrough, Esq.

**SERVICE LIST**

Ms. Barbara Fernandez, Esq.
Hinshaw & Culbertson, LLP
4 Floor
2525 Ponce de Leon Boulevard
Coral Gables, FL 33134
Telephone: 305-428-5031
Facsimile: 305-577-1063

Via Notices of Electronic Filing generated by CM/ECF